Z. G. THOMPSON *v.* SEABOARD AIR LINE RAILWAY COMPANY.

(Filed 8 April, 1914.)

1. Railroads—Torts—Negligence—Damage by Fire—Timber Rights
   —Damages Remote.

   There can be no recovery of damages occasioned unintentionally
   and indirectly to one from the tort of another; and recovery of
   damages will be denied to one who had a contract for cutting tim-
   ber on the lands of another, alleged merely to have been caused
   by the negligence of a railroad company in setting fire to the tim-
   ber growing thereon, and thus preventing the plaintiffs from
   making the profits he would otherwise have made under his con-
   tract.

2. Railroads — Torts — Negligence — Damages by Fire—Proximate
   Damages.

   A railroad company negligently set fire to the lands of the
   owner, and was sued to recover damages, by one having a con-
   tract to cut the timber therefrom, arising from the loss of certain
   of his groceries, and the reconstruction of certain shack-houses
   he was permitted by the owner to use, occasioned by the defend-
   ant's tort: *Held,* these damages are not too remote for recovery.

APPEAL by defendant from *Lyon, J.,* at October Term, 1913,
of BLADEN.

Civil action to recover damages for losses alleged to have been
sustained by fire, tried upon exceptions by defendant to report
of a referee. The court overruled the exceptions, and the de-
fendant appealed.

*No counsel for plaintiff.*

*W. H. Neal, McIntyre, Lawrence & Proctor for defendant.*

BROWN, J. It appears from the findings of fact that the United Lumber Company was the owner of a lot of pine timber growing upon certain lands in Bladen County; the plaintiff had a contract with said company to cut and saw up all of said timber at $7.50 per thousand feet; that the plaintiff cut and sawed 12,670 feet, when the defendant's right of way, being in a foul condition, caught fire from sparks from the defendant's engine, which being communicated to this adjoining tract of timber, caused a large part of it to be burned over and destroyed.

After the fire, the plaintiff resumed operations and cut and sawed 242,571 feet. The evidence shows that the fire destroyed certain "shacks" that plaintiff had use of, and which he rebuilt in order to resume work after the fire; also that groceries and provisions belonging to the plaintiff were destroyed.

The referee and the court rendered judgment:

1. For groceries and provisions, $65.

2. Damages accruing from destruction and loss of the buildings rebuilt by the plaintiff, $75 (reduced by the court to $25).

3. Loss of profits consequent upon the destruction of that part of the timber which the plaintiff could not cut, as it was destroyed by fire, $870. (This was reduced by the judge to $475.)

We think it plain that the plaintiff is entitled to recover the first and second items of damage awarded for loss of groceries and damage and cost incurred by destruction of the shacks. We do not deem it necessary to discuss the exceptions relating to those items.

We think it well settled that the plaintiff is not entitled to recover the $475 profits which he failed to make on the part of the timber destroyed by the fire. There is not the slightest evidence, and there is no contention, that the defendant had any knowledge of the plaintiff's contract, and set out the fire for the purpose of injuring the plaintiff.

It is admitted that the owner of the timber has recovered full compensation for the destruction of the timber, in which the plaintiff had no interest except a contract to cut it.

The general principle of law is that no recovery can be had for an indirect unintended injury to one arising from a tort to another. The rule is thus stated in 8 A. and E. Enc., 600:

"Where, however, by the *willful* tort of a third person, one of two contracting parties is disabled from performing his contract, the wrong having been committed *with intent* to injure the other, it has been held that the latter may recover from the tort feasor in damages. But unless the wrong is done with a willful intent to injure the complaining party, the latter cannot recover."

Many cases illustrating the application of this principle are cited in the notes.

The rule is clearly stated in 1 Sutherland on Damages, sec. 33, as follows:

"Where the plaintiff sustains injury from the defendant's conduct to a third person, it is too remote, if the plaintiff sustains no other than a contract relation to such third person, or is under contract obligation on his account, and the injury consists only in impairing the ability or inclination of such third person to perform his part, or in increasing the plaintiff's expense or labor of fulfilling such contract, unless the wrongful act is willful for that purpose."

The author gives many illustrations of the application of this doctrine taken from decided cases. To the same effect are Sedgwick, Hale, Maine, and Joyce in their books on Damages. This doctrine is laid down by the English courts, and generally applied in the courts of this country. See the opinions of the several judges in *Lumley v. Gye,* 75 E. C. Law, 217; *Ashley v. Harrison,* 1 Esp. N. P., 48.

The decided cases are too numerous to quote except from a few.

In *Anthony v. Slaid,* 11 Met. (Mass.), 290, it was held that one under obligation by contract to support a pauper could not recover the increased charges to which he was put by reason of an assault by the defendant on the pauper.

In *Dale v. Grant,* 34 N. J. L., 142, it is held that a party who has contracted for the output of a manufacturing establishment

cannot recover damages of a wrongdoer who, by trespass, interrupted and damaged the factory so that the quantity of the output is lessened.

In *Gregory v. Brooks,* 35 Conn., 437, it is held that where one is injured by the wrongful act of another, and others are indirectly and consequentially injured, but not by reason of any natural or legal relation, the injuries of the latter are too remote to constitute a cause of action. But the rule is different where the injury is done to one with a malicious or fraudulent design to injure another through a contract relation. A privity must exist between the act of a wrongdoer and the injury complained of in order to lay the foundation of a recovery. *McNary v. Chamberlin,* 34 Conn., 388, and cases cited; *Lumber Co. v. Telegraph Co.,* 123 Cal., 429.

Therefore, and for that reason, it is held in *Byrd v. English,* 117 Ga., 191, that a party to a contract, who is injured by reason of the failure of the other party to comply with its terms, cannot recover damages of a third person, a wrongdoer, whose negligence rendered the performance of the contract impossible. *Brink v. R. R.,* 53 L. R. A., 812.

A leading and often cited case on this subject of remote and indirect damages is *Insurance Co. v. R. R.,* 25 Conn., 265. It was a suit brought by an insurance company to recover damages for a loss in insurance money, paid out on the life of a person killed by the negligence of the railroad company. The relatives of the deceased had recovered damages of the railroad company for the value of the life of the person killed. The court held that the plaintiff insurance company could not recover, because there was no privity of contract between the insurers and the railroad company, and no direct obligation of the latter to the former growing out of the contract, or relation between the insured and the railroad company.

In the course of an elaborate opinion, in giving the reasons for this doctrine, *Judge Storrs* says: "An individual slanders a merchant and ruins his business: is the wrongdoer liable to all the persons who, in consequence of their relations by contract to the bankrupt, can be clearly shown to have been damnified by

the bankruptcy? Can a fire insurance company, who has been subjected to loss by the burning of a building, resort to the author of the injury who had no design of affecting their interests, in their own name and right?

"Such are complications of human affairs, so endless and far-reaching the mutual promises of man to man in business and in matters of money and property, that rarely is a death produced by a human agency which does not affect the pecuniary interests of those to whom the deceased was bound by contract.

"To open the door of legal redress to wrongs received through the mere voluntary and factitious relation of a contractor with the immediate subject of the injury would be to encourage collusion and extravagant contracts between men, by which the death of either, through the involuntary default of others, might be made a source of splendid profits to the other, and would, also, invite a system of litigation more portentous than our jurisprudence has yet known."

That case is reported in 65 Am. Decisions, and on page 577 are to be found the notes containing many cases sustaining it.

In *Squire v. Telegraph Co.,* 98 Mass., 232, *Chief Justice Bigelow,* in discussing this doctrine, says: "A rule of damages which should embrace within its scope all the consequences which might be shown to have resulted from a failure to perform a stipulated duty or service would be a serious hindrance to the operations of commerce, and to the transaction of the common business of life. The effect would be to impose a liability wholly disproportionate to the nature of the act or service which a party has bound himself to perform, and to compensation paid and received therefor."

"Courts of justice, therefore," says Sedgwick, commenting on that case, "allow recovery only for such damage as is the proximate consequence of the defendant's wrong, and exclude from consideration consequences which are remote." Vol. 1, pp. 201 to 202.

This Court has recognized that rule and held that "Consequential damage, to be recoverable in an action of tort, must be

the proximate consequence of the act complained of, and not the secondary result." *Sledge v. Reid,* 73 N. C., 441, and cases cited.

We are, therefore, of opinion that the court erred in allowing the third item of $870, reduced to $475.

The cause is remanded to the Superior Court of Bladen County, with directions to enter judgment in accordance with this opinion.

The costs of this Court will be taxed against the plaintiff.

Error.