IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA19-1031

Filed: 18 August 2020

North Carolina Industrial Commission, I.C. No. TA-26709

KEITH WILLIAMS, CEO/DIRECTOR, SOUTHEASTERN PUBLIC SAFETY GROUP, INC., Plaintiff,

v.

NORTH CAROLINA DEPARTMENT OF JUSTICE, CRIMINAL STANDARDS DIVISION, Defendant.

Appeal by Plaintiff from an Order filed 18 June 2019 by the North Carolina Industrial Commission. Heard in the Court of Appeals 14 April 2020.

*Ian Morris for plaintiff-appellant.*

*Attorney General Joshua H. Stein, by Assistant Attorney General Kenzie M. Rakes, for defendant-appellee.*

MURPHY, Judge.

The State Tort Claims Act authorizes the Industrial Commission to hear claims arising as a result of the negligence of any agent of the State within the scope of their employment. Where the Industrial Commission does not dismiss a claim for lack of subject matter jurisdiction, but instead for failure to state a claim upon which relief may be granted, we affirm when the claim is not a recognized form of negligence.

There is neither a statute nor caselaw in North Carolina which would support Plaintiff's claim for negligent interference with a contract. In 1914, our Supreme

Court held a party to a contract who is injured by the negligence of a third party cannot recover damages from that third party. North Carolina caselaw does not support Plaintiff's request that we recognize the tort of negligent interference with a contract. Further, since we are an error-correcting court, it is not our role to expand the law. The claim for negligent interference with a contract was properly dismissed for failure to state a claim upon which relief may be granted. We affirm.

## **BACKGROUND**

Southeastern Public Safety Group, Inc. ("Southeastern") is a North Carolina corporation and certified company police agency. On 31 March 2015, Southeastern became certified to provide law enforcement services to the North Carolina Department of Transportation. On 19 July 2016, Southeastern won a bid to provide law enforcement services for traffic control to Sugar Creek Construction ("SCC"). The contract required traffic control by a law enforcement agency in an active work zone.

On 7 April 2017, Southeastern's Chief Executive, Keith Williams ("Williams"), was contacted by Morgan Powell of the Federal Highway Administration. Powell was in contact with Randy Munn ("Munn"), an official representative of the North Carolina Department of Justice ("the NCDOJ"). Powell contacted Williams by forwarding a message from Munn, where Munn requested information on Williams's "certification as a company police agency." Williams complied. Munn later forwarded Williams an email from the Assistant Attorney General, informing Williams that his

work for SCC was in violation of N.C.G.S. § 74E ("the Company Police Act") and Southeastern must stop work on the contract immediately.

On 18 December 2017, Williams, in his official capacity and on behalf of Southeastern, filed a North Carolina Industrial Commission ("NCIC") Form T-1[1] ("T-1 Affidavit")for a claim of damages under the Tort Claims Act. Williams made claims of work stoppage attributed to the NCDOJ in its failure to administrate the Company Police Act. The T-1 Affidavit further alleged the administrative stoppage prevented the business from providing police services as contracted and caused severe economic loss.

The NCDOJ filed a Motion to Dismiss on 21 February 2018, pursuant to Rule 12(b)(6) for failure to state a claim and Rule 12(b)(1), (2), and (6) for lack of subject matter jurisdiction over intentional tort and/or constitutional rights violations. Williams moved to amend the complaint on 6 March 2018 to include additional causes of action based on "negligent infliction of economic loss" due to breaches of duty to investigate and duty to inform.

On 30 May 2018, the Deputy Commissioner entered an order ("the 30 May 2018 Order") dismissing Williams's claims with prejudice under Rule 12(b)(1) due to lack of subject matter jurisdiction of the NCIC to handle claims of alleged intentional tort or constitutional rights violations and breach of contract actions. A notice of

---

[1] The T-1 Affidavit is a form the NCIC requires a claimant to file in order to enter the case onto its hearing docket.

appeal and application for review to the Full Commission was submitted by Williams on 14 June 2018. Williams argued "[t]he claim was and still is that [the NCDOJ] negligently inflicted economic harm to Southeastern by failing to thoroughly administer, supervise, investigate, inform and protect Southeastern." Further, Williams argued "[w]hile some of the alleged actions of . . . Munn were intentional actions, they could just as easily be attributed to misfeasance, inaction, poor supervision, or outright incompetence."

The Full Commission's order ("the Order") affirmed the 30 May 2018 Order. The Full Commission held "[Williams's] Affidavit and *Motion to Amend Complaint* include allegations of constitutional violations, breach of contract claims, and intentional torts, including tortious interference with a contract. Said claims are outside of the [NCIC]'s jurisdiction and, as such, are subject to dismissal." The Order further concluded that "[t]o the extent [Williams] has remaining purported negligence claims, including negligent tortious interference with a contract, they are not recognized claims under which relief can be granted under North Carolina law and are subject to dismissal under Rule 12(b)(6)." Williams timely appealed on 17 July 2019.

## ANALYSIS

### A. Standard of Review

The standard of review for an appeal from the Full Commission's decision under the Tort Claims Act 'shall be

- 4 -

for errors of law only under the same terms and conditions as govern appeals in ordinary civil actions, and the findings of fact of the Commission shall be conclusive if there is any competent evidence to support them.'

*Simmons ex rel Simmons v. Columbus Cnty. Bd. of Educ.*, 171 N.C. App. 725, 727-28, 615 S.E.2d 69, 72 (2005) (quoting N.C.G.S. § 143-293 (2003)). "Under the Tort Claims Act, when considering an appeal from the [Full] Commission, our Court is limited to two questions: (1) whether competent evidence exists to support the [Full] Commission's findings of fact, and (2) whether the [Full] Commission's findings of fact justify its conclusions of law and decision." *Fennell v. N.C. Dep't of Crime Control & Pub. Safety*, 145 N.C. App. 584, 589, 551 S.E.2d 486, 490 (2001).

"[T]he North Carolina Rules of Civil Procedure apply in tort claims before the Commission, to the extent that such rules are not inconsistent with the Tort Claims Act, in which case the Tort Claims Act controls." *Pate v. N.C. Dep't of Transp.*, 176 N.C. App. 530, 533, 626 S.E.2d 661, 664 (2006); N.C.G.S. § 143-300 (2019).

**1. Dismissal for Lack of Subject Matter Jurisdiction**

The NCIC is "a court for the purpose of hearing and passing upon tort claims against . . . institutions and agencies of the State." N.C.G.S. § 143-291 (2019).

> The [NCIC] shall determine whether or not each individual claim arose as a result of the negligence of any officer, employee, involuntary servant or agent of the State while acting within the scope of his office, employment, service, agency or authority, under circumstances where the State of North Carolina, if a private person, would be liable to the claimant in accordance with the laws of North Carolina.

*Id.* "It is well-settled that the Tort Claims Act does not permit recovery for intentional injuries. Only claims for negligence are covered." *Fennell*, 145 N.C. App. at 592, 551 S.E.2d at 492 (internal citations omitted); N.C.G.S. § 143-291 (2019).

"Every defense, in law or fact, to a claim for relief in any pleading, . . . shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: (1) Lack of jurisdiction over the subject matter." N.C.G.S. § 1A-1, Rule 12(b)(1) (2019). "Subject matter jurisdiction is conferred upon the courts by either the North Carolina Constitution or by statute." *Harris v. Pembaur*, 84 N.C. App. 666, 667, 353 S.E.2d 673, 675 (1987). "The question of subject matter jurisdiction may be raised at any time, even in the Supreme Court." *Lemmerman v. A.T. Williams Oil Co.*, 318 N.C. 577, 580, 350 S.E.2d 83, 85-86 (1986).

"It is a universal rule of law that parties cannot, by consent, give a court, as such, jurisdiction over subject matter of which it would otherwise not have jurisdiction. Jurisdiction in this sense cannot be obtained by consent of the parties, waiver, or estoppel." *Pulley v. Pulley*, 255 N.C. 423, 429, 121 S.E.2d 876, 880 (1961). "Whether a trial court has subject-matter jurisdiction is a question of law, reviewed de novo on appeal." *McKoy v. McKoy*, 202 N.C. App. 509, 511, 689 S.E.2d 590, 592 (2010).

"When the record shows a lack of jurisdiction in the lower court, the appropriate action . . . is to arrest judgment or vacate any order entered without authority." *State v. Felmet*, 302 N.C. 173, 176, 273 S.E.2d 708, 711 (1981). "When the record is silent and the appellate court is unable to determine whether the court below had jurisdiction, the appeal should be dismissed." *Id.*

**2. Dismissal for Failure to State a Claim**

"Every defense, in law or fact, to a claim for relief in any pleading, . . . shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: (6) Failure to state a claim upon which relief can be granted." N.C.G.S. § 1A-1, Rule 12(b)(6) (2019).

> The motion to dismiss under N.C. R. Civ. P. 12(b)(6) tests the legal sufficiency of the complaint. In ruling on the motion the allegations of the complaint must be viewed as admitted, and on that basis the court must determine as a matter of law whether the allegations state a claim for which relief may be granted.

*Henderson v. Charlotte-Mecklenburg Bd. of Educ.*, 253 N.C. App. 416, 419, 801 S.E.2d 145, 148 (2017).

Dismissal is proper when one of the following three conditions is satisfied: "(1) the complaint on its face reveals that no law supports the plaintiff's claim; (2) the complaint on its face reveals the absence of facts sufficient to make a good claim; or (3) the complaint discloses some fact that necessarily defeats the plaintiff's claim." *Wood v. Guilford Cty.,* 355 N.C. 161, 166, 558 S.E.2d 490, 494 (2002). "This Court

must conduct a *de novo* review of the pleadings to determine their legal sufficiency and to determine whether the trial court's ruling on the motion to dismiss was correct." *Leary v. N.C. Forest Prods., Inc.,* 157 N.C. App. 396, 400, 580 S.E.2d 1, 4, *aff'd per curiam*, 357 N.C. 567, 597 S.E.2d 673 (2003).

## B. Subject Matter Jurisdiction

The Order dismissed Williams's negligence claims, "including negligent tortious interference with [a] contract," under Rule 12(b)(6). The non-negligence claims were dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction.

Williams argues the Full Commission erred in finding that his complaint was based on some intentional tort and not the negligent supervision, administration, and investigation of Southeastern by Munn and the NCDOJ. Williams argues the Full Commission has jurisdiction over claims that arise from the negligence of any agent of the State while acting within the scope of his employment. Williams argues the NCDOJ ordered it to cease work on its contract with SCC, and as a result it "suffered personal, economic injury." Further, Williams argues Munn was not intentionally injuring Williams, but rather this injury was the result of Munn's negligence. Williams asks us to conclude the Full Commission does have subject matter jurisdiction.

"The State Tort Claims Act authorizes the [NCIC] to entertain claims arising as a result of a negligent act of any officer, employee, involuntary servant, or agent

of the State while acting within the scope of his office, employment, service, agency, or authority[.]" *Guthrie v. N.C State Ports Auth.*, 307 N.C. 522, 536, 299 S.E.2d 618, 626 (1983); N.C.G.S. § 143-291 (2019). "Waiver of sovereign immunity may not be lightly inferred and State statutes waiving this immunity . . . must be strictly construed." *Guthrie*, 307 N.C. at 537-38, 299 S.E.2d at 627.

> Suits against the State, its agencies and its officers for alleged tortious acts can be maintained only to the extent authorized by the Tort Claims Act, . . . and that Act authorizes recovery only for negligent torts. Intentional torts . . . are not compensable under the Tort Claims Act.

*Wojsko v. State*, 47 N.C. App. 605, 610, 267 S.E.2d 708, 711 (1980); *see also* N.C.G.S. § 143-291 (2019).

The Order dismissed the claim of "negligent tortious interference with a contract" under Rule 12(b)(6). The Full Commission acknowledged the motion to dismiss under Rules 12(b)(1) and 12(b)(6), but chose to dismiss the negligence claim under Rule 12(b)(6). The Full Commission did not dismiss the negligence claim for lack of subject matter jurisdiction, but instead for failure to state a claim upon which relief may be granted. Therefore, this claim was properly dismissed. While the Full Commission dismissed the non-negligence claims under Rule 12(b)(1), it did not order that it lacked jurisdiction to decide a negligence claim.

The Full Commission did not err in dismissing Williams's claim of negligent interference with a contract because the claim was dismissed for failure to state a claim upon which relief may be granted, not for lack of subject matter jurisdiction.

## C. Failure to State a Claim

Williams next argues the Full Commission erred in finding no claim was alleged because Williams established the NCDOJ had a duty to administer, supervise, investigate, and inform company police agencies and failed to do so. Williams argues the claim was and still is that the NCDOJ negligently stopped it from working in contract with SCC, thus the NCDOJ breached their duty under the Company Police Act. Further, Williams argues the NCDOJ was not seeking to intentionally injure the contract, but the NCDOJ was the actual and proximate cause of Williams's injury and inability to complete the contract.

"A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint by presenting 'the question whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief can be granted under some [recognized] legal theory.'" *Forsyth Mem'l Hosp., Inc. v. Armstrong World Indus. Inc.,* 336 N.C. 438, 442, 444 S.E.2d 423, 425-26 (1994) (quoting *Lynn v. Overlook Dev.*, 328 N.C. 689, 692, 403 S.E.2d 469, 471 (1991)). Dismissal is proper under Rule 12(b)(6) when "the complaint on its face reveals that no law supports the plaintiff's claim." *Wood,* 355 N.C. at 166, 558 S.E.2d at 494.

This appeal is bound by the jurisdictional requirements of the Tort Claims Act, and therefore any claim must be based in negligence. "Under the Tort Claims Act, jurisdiction is vested in the [NCIC] to hear claims against the State of North Carolina

for personal injuries sustained by any person as a result of the negligence of a State employee while acting within the scope of his employment." *Guthrie*, 307 N.C. at 536, 299 S.E.2d at 626.

There is neither a statute nor any caselaw supporting Williams's claim for negligent interference with a contract. North Carolina recognizes a claim for tortious interference with a contract. *See Beck v. City of Durham,* 154 N.C. App. 221, 231-232, 573 S.E.2d 183, 191 (2002). However, our Supreme Court has declined to recognize negligent interference with a contract. *See generally Thompson v. Seaboard Air Line Ry.*, 165 N.C. 377, 81 S.E. 315 (1914).

In *Thompson v. Seaboard Air Line Ry.*, a lumber company contracted with the plaintiff to cut and saw timber. *Thompson*, 165 N.C. at 378, 81 S.E. at 316. The plaintiff brought an action against a railway company after a fire ignited by sparks from a train engine destroyed a portion of a timber lot where the plaintiff was working. *Id.* Evidence showed that the fire destroyed groceries, provisions, and shacks owned by the plaintiff. *Id.* The Supreme Court noted that "no recovery can be had for an indirect, unintended injury to one arising from a tort to another." *Id.* at 379, 81 S.E. at 316.

> Where, however, by the willful tort of a third person, one of two contracting parties is disabled from performing his contract, the wrong having been committed with *intent* to injure the other, it has been held that the latter may recover from the tort feasor in damages. But *unless the*

> *wrong is done with a willful intent to injure the*
> *complaining party, the latter cannot recover*.

*Id.* (emphasis added) (internal alterations omitted). While *Thompson* is not an

express rejection of a negligent interference with a contract cause of action, it is an

implicit rejection. Presented with the opportunity to recognize such a cause of action,

our Supreme Court demurred and instead cited approvingly authority holding the

injury too attenuated from the wrongdoing to merit recognition of a claim based on

inability to perform a contract due to a third party's negligence. *Id.* at 380, 81 S.E.

at 316 (citing *Byrd v. English*, 117 Ga. 191, 43 S.E. 419 (1903)).

In *Thompson*, our Supreme Court cited *Byrd v. English* to support the

application of the principle that "unless the wrong is done with a willful intent to

injure the complaining party, the latter cannot recover." *Thompson,* 165 N.C. at 379-

380, 81 S.E. at 316. *Byrd* is a case from the Supreme Court of Georgia that is

analogous to the present situation where Williams is claiming negligent interference

with a contract, and given our Supreme Court's reliance on the same, we consider it

here.

> According to this petition, the damage done by them was to
> the property of the Georgia Electric Light Company, who
> were under contract to the plaintiff to furnish him with
> electric power, and the resulting damage done to the
> plaintiff was that it was rendered impossible for that
> company to comply with its contract. If the plaintiff can
> recover of these defendants upon this cause of action, then
> a customer of his, who was injured by the delay occasioned
> by the stopping of his work, could also recover from them,
> and one who had been damaged through his delay could in

> turn hold them liable, and so on without limit to the number of persons who might recover on account of the injury done to the property of the company owning the conduits. To state such a proposition is to demonstrate its absurdity.

*Byrd v. English*, 117 Ga. 191, 193-94, 43 S.E. 419, 420 (1903). *Byrd* held a party to a contract, who is injured by reason of the failure of the other party to comply with its terms, cannot recover damages of a third person, a wrongdoer, whose negligence rendered the performance of the contract impossible. *See id.*

Here, Williams's claim is analogous to the situation in *Byrd*. Williams argues the NDDOJ negligently stopped Southeastern from working in contract with SCC, breaching its duty under the Company Police Act. Further, Williams argues the NCDOJ was the actual and proximate cause of Southeastern's injury and inability to complete the contract with SCC. Therefore, Williams is arguing the NCDOJ, a third party, was negligent and rendered the performance of the contract impossible. However, the courts in *Byrd* and *Thompson* held a party to a contract who is injured by the negligence of a third party cannot recover damages from that third party. As a result, North Carolina caselaw does not support Williams's request that we recognize the tort of negligent interference with a contract.

Even if negligent interference with a contract was an issue of first impression as Williams states, and it has not been barred from recognition by our Supreme Court, it would not be our role to expand the law in a way to create such a cause of action. "This Court is an error-correcting court, not a law-making court." *Shera v.*

*N.C. State Univ. Veterinary Teaching Hosp.*, 219 N.C. App. 117, 127, 723 S.E.2d 352, 358 (2012). We are "not in the position to expand the law. Rather, such considerations must be presented to our Supreme Court or our Legislature, who have the power to rectify any inequities . . . ." *Id.* at 126, 723 S.E.2d at 358. It would be the role of the General Assembly or our Supreme Court to expand the law to create a cause of action for negligent interference with a contract.

"[T]he Tort Claims Act . . . waive[s] the sovereign immunity of the State in those instances in which injury is caused by the negligence of a State employee and the injured person is not guilty of contributory negligence, giving the injured party the same right to sue as any other litigant." *Guthrie,* 307 N.C. at 535, 299 S.E.2d at 625. Since the Tort Claims Act is in derogation of sovereign immunity it must be strictly construed, and its terms must be strictly adhered to. *Etheridge v. Graham,* 14 N.C. App. 551, 554, 188 S.E.2d 551, 553 (1972); *Watson v. N.C. Dep't of Corr.,* 47 N.C. App. 718, 722, 268 S.E.2d 546, 549 (1980). As a result, even if it were in our power to expand the law, we would not expand the Tort Claims Act to include an unrecognized claim when sovereign immunity has not been waived with the knowledge of the creation of a new tort.

Williams failed to state a claim for which relief can be granted because negligent interference with a contract is not a tort recognized in North Carolina. The Full Commission did not err in dismissing this claim under Rule 12(b)(6).

### D. Full Commission's Consideration of Prior Filings

Williams argues the Full Commission relied too heavily on the T-1 Affidavit and not the proposed *Amended Complaint*. Specifically, Williams argues the Full Commission relied on the "emotional and colloquial language" of the T-1 Affidavit, and not the allegations of negligent behavior from the proposed *Amended Complaint*.

"[A]s a general rule this Court will not hear an appeal when the subject matter of the litigation has been settled between the parties or has ceased to exist." *Kendrick v. Cain*, 272 N.C. 719, 722, 159 S.E.2d 33, 35 (1968). "If the issues before the court become moot at any time during the course of the proceedings, the usual response is to dismiss the action." *130 of Chatham, LLC v. Rutherford Elec. Membership Corp.*, 241 N.C. App. 1, 8, 771 S.E.2d 920, 925 (2015). Having addressed the dismissal of the negligent interference with a contract claim as proper, Williams's argument that the Full Commission erred in its judgment basing the dismissal on the T-1 Affidavit rather than the proposed *Amended Complaint* is now moot. Dismissal of this third issue is proper.

### CONCLUSION

Williams's claim of negligent interference with a contract was properly dismissed for failure to state a claim upon which relief may be granted, not for lack of subject matter jurisdiction. Further, negligent interference with a contract is not

a tort recognized in North Carolina, and thus Williams failed to state a claim for which relief can be granted. The Full Commission did not err dismissing this claim.

Williams's claim that the Full Commission relied on the T-1 Affidavit rather than the proposed *Amended Complaint* is deemed moot because the negligent interference with a contract claim was properly dismissed.

AFFIRMED IN PART; DISMISSED IN PART.

Chief Judge MCGEE and Judge BROOK concur.